IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Wayne Antonio Joyner,<br>    Petitioner, | )<br>)<br>) |
| v. | )   1:17cv1473 (AJT/IDD) |
| Harold W. Clarke,<br>    Respondent. | )<br>)<br>) |

MEMORANDUM OPINION

Wayne Antonio Joyner, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of numerous offenses following a jury trial in the Circuit Court of the City of Norfolk. The matter comes before the Court on a Motion to Dismiss the petition filed by the respondent, to which petitioner has filed his opposition. For the reasons which follow, the Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

I. Background

On January 5, 2015, Joyner was convicted of malicious wounding, armed burglary, conspiracy to commit armed burglary, two counts of robbery, two counts of abduction with intent to extort money, and six counts of use of a firearm in the commission of a felony. Case Nos. CR130002780-00 through -02, -04 and -05; CR13004006-00 through -03, -07 through -10. Resp. Ex. 1. He was sentenced to 104 years' imprisonment with 46 years suspended. Resp. Ex. A.

The charges against Joyner stemmed from a home invasion robbery that occurred on June 7, 2013 at the apartment of Cheharri Eddins and Keshawn Saunders in Norfolk. In the early morning hours Saunders heard a loud noise and a masked man kicked in the bedroom door. Resp.

Ex. F, Tr. 52. Saunders struggled with the masked man and shot him in the chest. Id. at 53-57. Another masked man entered the room and shot Saunders. Id. at 165-70. Both of the intruders were armed with handguns. Id. at 164-65. The first masked man held Saunders down while the second searched the apartment and then returned to the bedroom and yelled at Saunders and Eddins, "Bitch give me all the money, where is the money, where is the drugs?" Id. at 167-68, 174. He made eye contact with Eddins, repeated his demands, and told her not to move. Id. at 168. He then searched the bedroom and took cash, marijuana and a gun. Id. at 185.

Saunders was transported to a hospital, and Joyner arrived at the same hospital with a gunshot wound to the chest. Police collected Joyner's clothing as evidence. Id. at 405-08. Joyner told police he had been shot at a general location different from where the robbery occurred and said "somebody" had dropped him off at the hospital; the police did not believe him. Id. at 410. Saunders' DNA was recovered from the shoes Joyner was wearing on the night the crimes took place, and Joyner's DNA was recovered from the carpet at the victims' apartment. Id. at 387-88. Joyner admitted at trial that he was in the victims' apartment but claimed he had gone there to return some marijuana when a fight broke out. Id. at 439-54.

Joyner took a direct appeal only of his convictions for the robbery of Cheharri Eddins and the related firearms offense; he did not appeal the eleven additional convictions that pertained to Keshawn Saunders. He argued on the direct appeal that the evidence was insufficient to support the convictions, and the Court of Appeals determined that the claim was barred pursuant to Va. Sup. Ct. R. 5A:18 because no motion to strike was made at the conclusion of all the evidence. Joyner v. Commonwealth, R. No. 2273-14-1 (Va. Ct. App. Sep. 8, 2015); Resp. Ex. B. The Supreme Court of Virginia refused Joyner's subsequent petition for appeal. Joyner v. Commonwealth, R. No. 151483 (Va. Apr. 22, 2016); Resp. Ex. C.

2

On April 17, 2017, Joyner filed a petition for a state writ of habeas corpus in the Supreme Court of Virginia, raising the following claims:

> 1. Trial counsel was ineffective for failing to (a) challenge Detective Lautenbacher's testimony that he spoke to Keshawn Sanders at the crime scene; and (b) challenge Lautenbacher's testimony that he spoke to Sanders at the hospital from which he narrated an account that conflicted with the victim's testimony.
>
> 2. Trial counsel was ineffective for failing to move to suppress Joyner's clothing and shoes which had been collected in violation of the Fourth Amendment.
>
> 3. Trial counsel was ineffective for failing to object to prosecutorial misconduct after the prosecutor allowed Lautenbacher to present conflicting testimony regarding his encounters with Saunders and Joyner.
>
> 4. Trial counsel was ineffective for failing to investigate how the Norfolk police identified Joyner as the perpetrator of the robberies.

Resp. Ex. D. The petition was dismissed on October 19, 2017. Joyner v. Clarke, R. No. 170570 (Va. Oct. 19, 2017); Resp. Ex. E. The Court denied rehearing on February 1, 2018. Resp. Ex. F.

Meanwhile, Joyner filed the instant petition for a writ of habeas corpus pursuant to § 2254 on December 14, 2017, raising eleven claims of ineffective assistance of trial counsel. Specifically, Joyner contends that counsel was ineffective for failing to:

> 1. Interview the victims who were witnesses for the Commonwealth.
>
> 2. Investigate how the police established probable cause for arrest on June 7, 2013.
>
> 3. Move to suppress Joyner's clothing that was seized

3

without a warrant.

4. Investigate hospital staff to ascertain why Joyner's clothing was given to the police on June 7, 2013.

5. Challenge the detective's testimony that he spoke to the victim at the crime scene and the hospital and then narrated an account that conflicted with the victim's testimony.

6. Object to prosecutorial misconduct when the prosecutor allowed conflicting testimony by the detective to go uncorrected.

7. Object to prosecutorial misconduct when the prosecutor commented on the alleged conversation between Joyner and the detective in closing argument.

8. Object to prosecutorial misconduct when the prosecutor implied in closing argument that defense counsel's sole job was to defend his client rather than to find the truth.

9. Consult with Joyner before drafting and submitting an appeal of the judgment.

10. Move to suppress biological evidence that was collected with a swab and submitted to a forensic laboratory six days after a warrantless search of Joyner's clothing.

11. Object to prosecutorial misconduct when the prosecutor commented on a pre-arrest statement that the only one talking to the police was the victim.

Dkt. No. 1.

On April 26, 2018, respondent filed a Motion to Dismiss with a supporting brief and exhibits, and provided petitioner with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 8-11] After receiving an extension of time, Joyner

4

filed his opposition to the Motion to Dismiss on June 27, 2018. [Dkt. No. 16] Accordingly, this matter is ripe for disposition.

## II. Timeliness

A petition for a federal writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). In this case, Joyner's claims are timely only as they relate to one of the victims, Cheharri Eddins.[1] As noted above, on direct appeal Joyner challenged only the robbery charge and related firearms offense against Eddins. Resp. Ex. B. Those convictions became final and the AEDPA limitations period began to run on July 20, 2016, ninety days after the Supreme Court of Virginia refused Joyner's petition for appeal on April 22, 2016. Resp. Ex. C. See U.S. Sup. Ct. R. 13(1) (petitions for review are timely filed within 90 days of the entry of judgment by a state court of last resort); see also Lawrence v. Florida, 549 U.S. 327, 333 (2007).

In calculating the one-year limitations period, the Court must exclude the time during which properly-filed state collateral proceedings pursued by a petitioner were pending. See 28 U.S.C. § 2244(d)(2). When Joyner filed his state habeas petition on April 17, 2017, approximately nine months of untolled time had elapsed. By the time the Supreme Court of Virginia denied rehearing of its dismissal of the habeas petition on February 1, 2018, Resp. Ex. F, Joyner had already filed this federal petition. Therefore, this petition is timely as to the

---

[1] Respondent bases its timeliness calculations on the incorrect belief that the direct appeal "was finalized ... on April 17, 2017 ...." Resp. Brief at 5. In fact, the Supreme Court of Virginia refused Joyner's petition for appeal on April 22, 2016. Resp. Ex. C. Nonetheless, when the correct dates are used this federal petition still is timely as to the two convictions relating to Eddins.

5

robbery and firearm convictions involving Eddins.

As to the eleven convictions involving Deshawn Saunders, because they were not challenged on direct appeal they became final and the AEDPA limitations period began on February 4, 2015, thirty (30) days after the Order of conviction was entered on January 5, 2015. Resp. Ex. A; see United States v. Williams, 139 F.3d 896 (table), 1998 WL 120116 at *2 (4th Cir. Mar. 5, 1998) ("Under Virginia law, a conviction is final thirty days after the entry of the judgment of conviction."). The limitations period ran unchecked until Joyner filed his state habeas petition on April 17, 2017, over two years later. By then the federal statute of limitations had expired, and the pendency of the state proceeding could no longer toll the limitations period. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (same). Therefore, Joyner's claims are time-barred as they relate to the convictions involving Saunders.

For purposes of this discussion, however, this discrepancy in the timeliness of the petition as to the crimes committed against the two victims is of no consequence. Joyner does not distinguish or specify which conviction or convictions he intends to challenge in his habeas claims, so none can be dismissed as time-barred. And since, as will be seen, none of the claims warrants relief, it is unnecessary to inquire further into the issue.

### III. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a person convicted of a state crime must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982). To comply with the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any

6

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. Duncan v. Henry, 513 U.S. 364 (1995).

In addition, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Gray v. Netherland, 518 U.S. 152, 161 (1996). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. at 162. Therefore, such a claim is deemed to be simultaneously exhausted and defaulted for purposes of federal habeas review. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

Here, Joyner failed to raise a portion of Claim 1 and Claims 7 through 11 of this federal petition in the state forum, and they hence are unexhausted. Were he to return to the state courts to attempt to raise those claims now, they would be procedurally defaulted pursuant to Va. Code § 8.01-654(B)(2), which states that "[n]o writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition." Accordingly, the unexhausted portion of Claim 1 and Claims 7 through 11 of this petition are simultaneously exhausted and defaulted from federal review. Bassette, 915 F.2d at 932.[2]

---

[2] In Claim 1, Joyner argues that he received ineffective assistance when his counsel failed to interview the victims. To the extent Claim 1 is based on counsel's failure to interview Cheharri Eddins, that portion of his claim is simultaneously exhausted and barred, because Joyner made no such argument in his state habeas proceeding, and he would be precluded from doing so now were he to return to the state forum.

A federal court may not review a procedurally barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 262 (1989). In Joyner's Brief in Support of Petition for Writ of Habeas Corpus he filed in opposition to the respondent's Motion to Dismiss [Dkt. No. 16], he makes no argument regarding cause and prejudice or actual innocence to excuse the procedural default of his unexhausted claims.

In Joyner's § 2254 petition itself, he acknowledges in each instance that claims 7 through 11 were not raised in his state habeas proceeding, and in each instance he offers as the explanation that "[t]he direct appeal was drafted solely by counsel and the petitioner was not consulted for input before it was submitted to the court." [Dkt. No. 1, Att. 3] He further asserts as to each claim that "[t]he exhaustion requirements were fulfilled." Id. Respondent has interpreted these references as an attempt by petitioner to invoke the doctrine announced in Martinez v. Ryan, 556 U.S. 1 (2012). [Dkt. No. 10 at 12 et seq.] In that case, the Supreme Court:

> ... held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the 'cause' for default 'consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding'; (3) 'the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim'; and (4) state law 'requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding.

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (quoting Trevino v. Thaler, 569 U.S. 413 (2013)). The Fourth Circuit has interpreted Martinez as creating a "narrow exception" to the general rule of Coleman v. Thompson, 501 U.S. 722 (1991), which bars federal review of a claim that was not exhausted in the state courts. Fowler, 753 F.3d at 460-61.

In the Court's view it is unclear whether Joyner's statements are intended to invoke the Martinez rule. He states that each of his unexhausted claims of ineffective assistance were not presented to the state courts because "[t]he direct appeal was drafted solely by counsel," and in Virginia clams of ineffective assistance of counsel generally cannot be raised on direct appeal. Johnson v. Commonwealth, 259 Va. 654, 675, 529 S.E.2d 769, 781 (2000). Nonetheless, giving Joyner the deference due to his pro se status and assuming that he did intend to rely on Martinez, he still fails to overcome the procedural default of his unexhausted claims. That is so because in each instance, the allegations of ineffective assistance he makes are not sufficiently "substantial" to come within its "narrow exception." As the Court in Martinez stressed, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 456 U.S. at 14. It is the petitioner's burden to demonstrate that his claims are "substantial." Fowler, 753 F.3d at 461. Here, Joyner makes no attempt to meet that burden; indeed, he never directly cites Martinez, and includes no argument whatever as to why it should apply to any of his defaulted claims. For the reasons which are thoroughly and correctly explained by the respondent, the defaulted claims and portions of claims all lack merit [Dkt. No. 10 at 12-20], and Martinez accordingly does not apply to excuse the procedural default of Joyner's unexhausted claims.

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is

9

"contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). Thus, "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Mandrigan, 550 U.S. 465, 673 (2007). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet - and it is - 'that is because it was meant to be.'" Burt v. Titlow, 571 U.S. 12, 20 (2013) (quoting Richter, 562 U.S. at 102).

When a federal habeas petitioner challenges the reasonableness of the factual basis for a state conviction, the AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro, 550 U.S. at 473-74. Under the AEDPA standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156

(E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

## IV. Analysis

In all of Joyner's cognizable claims, he argues that he received ineffective assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

Claims 1 and 2: Joyner argues that counsel was ineffective for failing to interview the victims who became witnesses for the Commonwealth or to investigate how the police established probable cause for his arrest. These claims collectively were exhausted as Claim 4 in the state habeas proceeding, where the Supreme Court of Virginia rejected them for the following reasons:

> In claim (4), petitioner contends he was denied the effective assistance of counsel because counsel failed to investigate how the police identified petitioner, thus linking him to the crimes. Petitioner appears to argue that had counsel investigated before trial, counsel would have discovered Saunders did not tell Detective Lautenbacher on the night of the alleged crimes that he had shot one of his assailants in the chest, which petitioner contends was the only evidence linking him to the crimes. Petitioner further asserts counsel could have used this information to argue petitioner was arrested without probable cause and that "all of the evidence leading up to [his] arrest" was inadmissible.

11

> The Court holds claim (4) satisfies nether the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record does not support petitioner's allegation that counsel would have discovered Saunders did not tell Detective Lautenbacher he had shot one of his assailants in the chest. Lautenbacher testified that when he spoke to Saunders at the hospital, Saunders said he had shot one of his assailants in the chest. Saunders acknowledged in his testimony that he had talked with the police at the hospital at some unspecified time, and he never denied telling Lautenbacher that he had shot one of his assailants in the chest. Moreover, petitioner proffers nothing to support that Saunders would have testified, if asked, that he did not tell Lautenbacher he had shot one of his assailants in the chest. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Joyner v. Clarke, Resp. Ex. E, slip op. at 6-7.

The foregoing determination is squarely in line with federal law, which recognizes that a petitioner cannot show that he was prejudiced by the absence of testimony unless he demonstrates "not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Alexander v. McClotter, 775 F.2d 595, 602 (5th Cir. 1985). Thus, where a petitioner fails to proffer precisely what testimony a missing witness would have provided and to supply an affidavit verifying that proffer, he does meet his burden to demonstrate that counsel's performance was ineffective. See Makdessi v. Watson, 682 F. Supp. 2d 633, 654 (E.D. Va. 2010). Since Joyner has proffered nothing to support his contention that Saunders would have testified that he did not tell Detective Lautenbacher that he shot one of the intruders, the Virginia courts' resolution of this claim was factually reasonable and in accord with these controlling federal principles, and the same result must be reached here. Williams, 529 U.S. at 412-13.

Claims 3 and 4: Joyner contends that counsel provided ineffective assistance by failing to

move to suppress his clothing that was seized at the hospital without a warrant and to investigate hospital staff to ascertain why the clothing was given to the police. These claims were exhausted in Claim 2 of Joyner's state habeas proceeding, where the Supreme Court of Virginia determined as follows:

> In claim (2), petitioner contends he was denied the effective assistance of counsel because counsel failed to move before trial to suppress petitioner's clothing and shoes. Petitioner alleges hospital personnel removed his clothing and shoes in the emergency room with no officers present. Petitioner argues the detectives then seized his clothing without probable cause or a warrant, in violation of his Fourth Amendment right against unlawful search and seizure, and that, as a result of the illegal seizure, Saunders' DNA was found on petitioner's shoes and admitted into evidence at trial.
>
> The Court holds claim (2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates petitioner voluntarily presented himself to the hospital for treatment of his gunshot wound. Counsel could thus reasonably have determined removal of petitioner's clothing by hospital personnel was a necessary incident of such treatment and that medical personnel could voluntarily surrender the clothing to police. See Craft v. Commonwealth, 221 Va. 258, 262-64, 269 S.E.2d 797, 799-801 (1980) (when gunshot victim voluntarily presented himself to hospital emergency room. he impliedly consented to necessary medical treatment, including removal of clothing and bullet, and doctor's turning those items over to police did not violate he Fourth Amendment). Counsel therefore could reasonably have determined there was no basis to move to suppress petitioner's clothing and shoes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Joyner v. Clarke, Resp. Ex. E, slip op. at 4-5.

The Virginia court's foregoing decision was both factually reasonable and in accord with applicable federal principles. Joyner presented himself to the emergency room on the night of

the crimes seeking treatment for his gunshot wound and was clad in a hospital gown in the trauma bay section when the police spoke to him. [Tr. 404-08, 410] At the time his clothes were removed and seized he thus was considered a "walk-in gunshot victim." [Tr. 404-05] In Craft, 269 S.E.2d at 799-801, the Supreme Court of Virginia determined that in circumstances indistinguishable from Joyner's, "[a] person admitting himself to an emergency room has little expectation of privacy," and if his clothing is removed by hospital personnel incident to his examination and treatment and given to police officers who are at the emergency room to investigate a shooting, "no search by the officers was required or effected ... because the clothing ... [was] not hidden or concealed." Id. at 800. Therefore, no violation of the defendant's Fourth Amendment rights occurred. Id.[3] Clearly, under these circumstances the Virginia court's determination that counsel was not ineffective for failing to challenge the surrender of Joyner's clothing as a Fourth Amendment violation did not amount to ineffective assistance was both factually reasonable and in accord with Strickland, supra, and Claims 3 and 4 of this petition must be dismissed. Williams, 529 U.S. at 412-13.

Claim 5: Joyner alleges that he received ineffective assistance of counsel when his attorney failed to challenge the detective's testimony that he spoke to Keshawn Saunders at the crime scene and at the hospital and then narrated an account that conflicted with Saunders' testimony that he did not talk to the police "that night." When Joyner made this same argument as Claim 1 in his state habeas petition, the Supreme Court of Virginia rejected it on the following holding:

---

[3]These same principles are recognized under federal law. See United States v. Davis, 690 F.3d 226, 234 (4th Cir. 2012) (where police officer had lawful access to shooting victim's bloody clothing in his hospital room, officer's seizure of the clothing fell within the scope-of-plain-view exception to the warrant requirement and did not violate the Fourth Amendment).

14

> The Court holds this portion of claim (1) satisfies neither the
> "performance" nor the "prejudice" prong of the two-part test
> enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984).
> The record, including the trial transcript, demonstrates Saunders
> was shot in both legs during the home invasion and robbery, which
> occurred in the apartment he shared with Eddins. Upon arrival at
> the crime scene, Detective Lautenbacher made "brief attempts" to
> talk to Saunders, who was being treated by paramedics.
>
> However, Lautenbacher received little information from Saunders
> other than that one of the assailants left a cell phone behind. Given
> Saunders' condition and treatment by paramedics, Lautenbacher
> discontinued his effort to talk to Saunders. Counsel could thus
> reasonably have determined there was no reason to impeach
> Lautenbacher's testimony that he spoke to Saunders at the crime
> scene. Moreover, given Saunders' condition, counsel could
> reasonably have concluded Saunders simply did not recall his brief
> interaction with the detective as the crime scene.
>
> Saunders was removed from the scene and taken to the hospital at
> approximately 1:17 a.m. He testified he underwent surgery about
> an hour later. Detectives Lautenbacher and Freeman arrived at the
> hospital at 2:30 a.m. They first received the clothing and shoes of
> a walk-in gunshot victim from another detective. Then, at some
> unspecified time, they talked to Saunders, who told them he had
> shot one of his assailants in the chest. Lautenbacher and Freeman
> then went to the emergency room and spoke with the walk-in
> gunshot victim, who turned out to be petitioner. Although
> Saunders testified he did not talk to the police "that night," he also
> testified he did not "see" the police until after he got out of surgery.
> He later acknowledged he spoke with the police at the hospital, but
> did not specify when and was unable to recall who he spoke to.
> Saunders never denied telling one of the detectives that he shot one
> his assailants in the chest. Counsel could thus reasonably have
> determined there was no conflict between Lautenbacher's and
> Saunders' testimony and, therefore, no reason to impeach
> Lautenbacher's testimony concerning his conversation with
> Saunders at the hospital. Thus, petitioner has failed to demonstrate
> that counsel's performance was deficient or that there is a
> reasonable probability that, but for counsel's alleged errors, the
> result of the proceedings would have been different.

Joyner v. Clarke, Resp. Ex. E, slip op. at 2-3.

15

For the reasons which are clearly explained in the Virginia court's opinion, it is readily apparent that counsel made no error of constitutional magnitude in failing to challenge Detective Lautenbacher's testimony that he spoke to Saunders at the crime scene and at the hospital, because "there was no conflict between Lautenbacher's and Saunders' testimony." Id. Accordingly, the omission of such an argument plainly did not affect the outcome of Joyner's trial, and the state court's resolution of this claim was in accord with Strickland, supra. Consequently, the same result is compelled here. Williams, 529 U.S. at 412-13.

Claim 6: Joyner contends that counsel rendered ineffective assistance by failing to object to what he characterizes as "prosecutorial misconduct" that allegedly occurred when conflicting testimony from Detective Lautenbacher regarding his encounters with Saunders and Joyner went "uncorrected." The Supreme Court of Virginia found no merit to this position for the following reasons:

> The Court holds claim (3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. A witness' testimony is not rendered incompetent or inadmissable simply because it conflicts with the testimony of another witness or other evidence. Such inconsistencies or conflicts may impact the credibility of the witness and the weight to be accorded his or her testimony. However, "the credibility of witnesses and the weight accorded to their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985). Counsel thus reasonably could have determined any objection to the prosecutor allowing conflicting testimony from Detective Lautenbacher regarding his encounters with Saunders and petitioner would have been futile. See Correll v. Commonwealth, 232 Va. 454, 469-70, 352 S.E.2d 352, 361 (1987) (counsel not ineffective for failing to make meritless objection). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

16

Joyner v. Clarke, Resp. Ex. E, slip op. at 5-6.

Under federal as well as Virginia law, an attorney has no duty to make meritless arguments. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005). For the reasons which were clearly articulated by the Supreme Court of Virginia, the objection Joyner now suggests would have been futile, and its omission had no bearing on the outcome of the trial. For these reasons, the rejection of this claim was factually reasonable and in accord with Strickland, supra, and it hence likewise must be denied here. Williams, 529 U.S. at 412-13.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted, and the petition will be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this 11th day of March 2019.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge